PRUDENTIAL-BACHE SECURITIES, INC. *vs.* COMMISSIONER OF
REVENUE & others.[1]

Suffolk. December 3, 1991. - March 16, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Taxation*, Income tax, Collection by distress, Commissioner of Revenue,
Nonresident. *Personal Property*, Securities. *Practice, Civil*, Standing,
Report. *Words*, "Property and rights to property."

In an action arising when the Commissioner of Revenue, relying on G. L.
c. 62C, § 53, served levies on a national stock brokerage firm in Massa-
chusetts in order to recover the amount of Massachusetts income taxes,
interest, and penalties allegedly due from a nonresident taxpayer, the
commissioner lacked authority under § 53 to reach assets of the tax-
payer that the brokerage firm maintained in accounts in an Illinois
branch office, where the taxpayer's property interest in his investment
accounts involved no obligation of the brokerage firm to pay money,
and where the right of the taxpayer to ask the brokerage firm to act
with respect to assets in an out-of-State investment account was not
"property and rights to property" within the meaning of § 53. [245-
247]

In an action by a national stock brokerage firm for interpleader under
Mass. R. Civ. P. 22, seeking a determination of the relative rights of
the defendant Commissioner of Revenue and of the defendant nonresi-
dent taxpayer to the taxpayer's assets that the firm maintained in joint
accounts in an Illinois branch office, the plaintiff had a sufficient inter-
est in the resolution of the conflict between the interests of the commis-
sioner and the interests of the taxpayer to entitle it to a declaratory
judgment on that issue and, furthermore, even though the taxpayer has
not appeared in this action, and even if the brokerage firm were a disin-
terested stakeholder, the trial judge, acting under Mass. R. Civ. P. 64,
properly sought this court's ruling on the effect of the tax levy, by re-
porting the case on statement of agreed facts and seeking a ruling on
the proper judgment to enter. [247-250]

[1]Syed Rahman and Gulzar Rahman.

CIVIL ACTION commenced in the Superior Court Department on April 18, 1990.

The case was reported to the Appeals Court by *Hiller B. Zobel,* J., on a statement of agreed facts. The Supreme Judicial Court transferred the case on its own initiative.

*Robert D. Hillman* for the plaintiff.

*Robert A. Carleo, Jr.,* for the Commissioner of Revenue.

WILKINS, J. Prudential-Bache Securities, Inc. (Prudential), brought this action for interpleader under Mass. R. Civ. P. 22, 365 Mass. 767 (1974), seeking a determination of the relative rights of the defendant Commissioner of Revenue (commissioner) and of the defendants Syed and Gulzar Rahman to the Rahmans' assets that Prudential maintains in joint accounts in an Illinois branch office. The controversy arose when the commissioner, relying on G. L. c. 62C, § 53 (1990 ed.), served levies on Prudential in Massachusetts in order to recover the amount of Massachusetts income taxes, interest, and penalties allegedly due from Syed Rahman, whom we shall call the taxpayer.

A judge of the Superior Court reported the case on a statement of agreed facts entered into between the commissioner and Prudential. The Rahmans were served under the Massachusetts "long arm" statute (G. L. c. 233A, § 3 [1990 ed.]), and neither has entered an appearance. We transferred the case to this court on our own motion.

In 1983, the taxpayer was a partner in a partnership that sold Massachusetts real estate at a gain, a portion of which was allocable to the taxpayer's partnership share. The Rahmans did not report the taxpayer's distributive share on their 1983 joint nonresident Massachusetts personal income tax return. The commissioner assessed a deficiency against the Rahmans in the amount of $25,492.00, as to which interest and penalties have accrued. In January, 1989, the commissioner served a notice of levy on a Prudential office in Springfield and served a second levy in February, 1989. Prudential is a Delaware corporation with its headquarters in New York. On receipt of the first demand, Prudential froze the Rahmans' accounts, and in April, 1990, confronted with

conflicting claims of the commissioner and the Rahmans, Prudential commenced this action.

The Rahmans live in Illinois and maintain six accounts at a Prudential branch office in Illinois. These accounts, whose assets are not related to the tax deficiency that the commissioner has asserted, contain shares of stock, mutual funds, and money market funds. Prudential services a customer's account at the branch office where the account is maintained. Transactions from any branch are completed electronically in New York. If the Rahmans were to demand funds at a Prudential office in Massachusetts, their demand would be communicated to their Prudential branch office in Illinois, where a Prudential representative would place orders to sell that would be sent to Prudential's office in New York and executed there. The proceeds would be credited to the Rahmans' account or accounts in Illinois and paid to them by check.

We agree with Prudential that the commissioner lacks authority under G. L. c. 62C, § 53, to reach the Rahmans' assets in their Illinois accounts by a levy served on Prudential in Massachusetts. We shall first explain that conclusion, and then we shall show why the issue is properly before us, although Prudential might be seen as having no standing to contest the commissioner's position.

1. The commissioner has the authority under G. L. c. 62C, § 53 (a), to "levy upon all property and rights to property" belonging to a person who has not paid a tax within ten days after demand. A levy on a person's real estate or bank account, even a joint bank account, is authorized. Cf. *United States* v. *National Bank of Commerce*, 472 U.S. 713, 724-725 (1985). Liquidated obligations owed to a person, such as unpaid wages (*State ex rel. Dep't of Revenue* v. *Control Data Corp.*, 300 Or. 471 [1986]), the right to payment of monies available under an insurance policy (*United States* v. *Brody*, 213 F. Supp. 905, 908 [D. Mass. 1963], aff'd sub nom. *Equitable Life Assurance Soc'y* v. *United States*, 331 F.2d 29 [1st Cir. 1964]), and a payee's interest in a cashier's check (*Harris* v. *Hill*, 129 Ga. App. 403, 407 [1973]), would also be properly subject to levy.

Here, however, the commissioner seeks to reach intangible assets of a nondomiciliary that are not in the Commonwealth. Unlike unpaid wages or a bank account, the Rahmans' joint property interest in their investment accounts involves no obligation of Prudential to pay money. The levy is made, at most, on the taxpayer's right in Massachusetts to ask Prudential at a Massachusetts office to initiate a disposition of the assets in those investment accounts that Prudential controls as agent in Illinois.

The right to ask Prudential to act with respect to assets in an out-of-State investment account is not property or a right to property. In Illinois, the State of the taxpayer's domicil, the stock interests and money market funds in the various accounts are property of the Rahmans because traditionally such intangible property is deemed to be situated in the place of the owner's domicil. See *Page* v. *Commissioner of Revenue*, 389 Mass. 388, 391-393 (1983); *First Nat'l Bank of Boston* v. *Commissioner of Corps. & Taxation*, 279 Mass. 168, 174 (1932). Those intangible assets have no similar status in Massachusetts. Because there is no debt owed by Prudential to the taxpayer, cases that authorize a creditor to reach the liquidated obligations of an in-State debtor to an out-of-State creditor have no application. See, e.g., *State ex rel. Dep't of Revenue* v. *Control Data Corp.*, *supra* (upholding State's garnishment of wages of nonresident employee who owed State taxes where employer did business in taxing State).

The commissioner has not cited, nor have we found, any case that treats the right to order the sale or delivery of securities or the right to order the withdrawal of funds from a mutual fund as property or the right to property. Although we subscribe to the view that the words "property and rights to property" should be construed broadly (see *Arrowhead Estates, Inc.* v. *Boston Licensing Bd.*, 15 Mass. App. Ct. 629, 632 [1983]), we see no valid basis for treating as a right to property a customer's right to issue instructions under an agency investment account. The Rahmans have the contractual right to order Prudential to conduct certain transactions

with the assets in the Illinois investment accounts. Prudential's contractual duty to act is neither property of the Rahmans nor a right to property.

If we were to view § 53 as authorizing a levy on an interest such as the taxpayer's right to ask Prudential in Massachusetts to take certain action as to assets in the Illinois investment accounts, we would be giving a scope to the statute that might raise due process of law problems under the Fourteenth Amendment to the Constitution of the United States. The presence in Massachusetts of property of a debtor is not alone a sufficient basis for a creditor to assert jurisdiction over that property. *Shaffer* v. *Heitner*, 433 U.S. 186, 212 (1977). In such a situation, the debtor's contacts with the forum State must meet the traditional notions of fair play and substantial justice stated in *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945). See also *Shaffer* v. *Heitner, supra* at 204; *Rush* v. *Savchuk*, 444 U.S. 320 (1980). Although there is good reason to justify, as consistent with due process, a levy on Massachusetts property of a nonresident in order to collect unpaid Massachusetts taxes (see *State ex rel. Dep't of Revenue* v. *Control Data Corp., supra* at 475-476), the right to levy on interests in Massachusetts of the character involved in this case is less secure in a due process sense.

Prudential has not argued, however, that it would be unconstitutional for Massachusetts to reach the taxpayer's Massachusetts interests involved here if § 53 were to be construed as the commissioner contends. In any event, we need not resolve any due process defect in the commissioner's levy because the construction we have given to § 53 eliminates that issue. The possibility, however, that the Rahmans would challenge any unfavorable judgment in this case as being entered in violation of their due process rights, and hence not entitled to full faith and credit in Illinois or elsewhere, bears on the standing of Prudential to maintain this action, an issue to which we now turn.

2. During oral argument, the Justices raised the question whether Prudential had standing to challenge the commis-

sioner's levy on the Rahmans' assets. A true stakeholder in an interpleader proceeding would bring the contestants to court, would submit the assets in issue to the court's control, and then would seek to be discharged from the balance of the proceeding. See Mass. R. Civ. P. 22, 365 Mass. 767 (1974).

The commissioner, who has not claimed that Prudential lacks standing, has filed a postargument brief concurring with Prudential's contention that it has standing. We have said that a party may not argue for the first time on appeal that an opponent lacks standing to raise a constitutional issue that was presented below without any objection to the party's standing. See *Aronson* v. *Commonwealth*, 401 Mass. 244, 247 (1987), cert. denied, 488 U.S. 818 (1988). Standing to raise an issue, however, that involves subject matter jurisdiction (*Doe* v. *The Governor*, 381 Mass. 702, 705 [1980]), may be challenged for the first time on appeal and may be raised, as here, by an appellate court on its own motion (*Department of Community Affairs* v, *Massachusetts State College Bldg. Auth.*, 378 Mass. 418, 422-423 [1979]). In this declaratory judgment proceeding, the question of standing is substantially the same as the question whether there is an actual controversy justifying declaratory relief under G. L. c. 231A. *Doe* v. *The Governor, supra.*

We conclude that Prudential has a sufficient interest in the resolution of the conflict between the interests of the commissioner and the interests of the Rahmans to entitle it to a declaratory judgment on that issue. Moreover, this court properly may decide the issue because it has been submitted on a reservation and report by the Superior Court judge in accordance with Mass. R. Civ. P. 64, 365 Mass. 831 (1974).

Prudential is not a stakeholder who can comfortably walk away from the second phase of this interpleader and declaratory judgment proceeding. Prudential might not be able to assert successfully before an out-of-State court that any Massachusetts judgment upholding the commissioner's claim to the assets Prudential holds is entitled to full faith and credit, as in a contest with the Rahmans in Illinois, for example. We have already noted in this opinion the question

whether the commissioner's levy on the Rahmans' interests in Massachusetts could be justified on due process grounds. The Rahmans have had no Massachusetts contacts with respect to the assets held by Prudential, and any Massachusetts connection with the Rahmans' interests in those assets is tenuous at best. These uncertainties entitle Prudential to maintain this action. Surely, there would be an actual controversy between Prudential and the commissioner if the Rahmans were not proper parties to this action. The possibility that the Rahmans may be proper parties to the action does not eliminate Prudential's standing in the circumstances.[2]

The case is properly before us quite apart from Prudential's standing to raise the issue of the commissioner's authority in this case. Even if Prudential lacks standing, a conflict obviously remains between the interests of the commissioner and the Rahmans. The judge would not have been warranted in entering judgment for the commissioner simply because the Rahmans did not enter an appearance. A judge has the duty to enter a judgment that is lawful in light of the facts established, even in the absence of a contest before him. See 10 C. A. Wright, A. R. Miller, & M. K. Kane, Federal Practice & Procedure, § 2692 at 466 (1983) ("the entry of a default judgment is a final disposition of the case and an appealable order"); *Bright* v. *American Felt Co.*, 343 Mass. 334, 336 (1961) (decree taking petition for confessed did not ensure decree for plaintiff but rather "required the entry of whatever decree those facts [properly pleaded] demanded"). Cf. *Aldabe* v. *Aldabe*, 616 F.2d 1089, 1092-1093 (9th Cir. 1980) (default judgment properly denied where plaintiff's substantive claims lacked merit). Indeed,

---

[2] We need not reach the further question whether Prudential has standing because it may be subject to penalties under G. L. c. 62C, § 54 (*c*) & (*d*) (1990 ed.), for failure to comply with a lawful demand for the surrender of property. Moreover, in all events, the prospect that the fully briefed issue of the validity of the levy will probably reappear could itself warrant a discretionary determination to answer it. See *Boston* v. *Keene Corp.*, 406 Mass. 301, 305 (1989).

the Rahmans could enter an appearance and claim an appeal from any final judgment in this matter, even though they had not previously entered appearances. See *Wolfe* v. *Massachusetts Port Auth.*, 366 Mass. 417, 422-423 (1974). Hence, even though the Rahmans have not appeared in this action, and even if Prudential were a disinterested stakeholder, the trial judge, acting under Mass. R. Civ. P. 64, 365 Mass. 831 (1974), properly sought our ruling on the effect of the tax levy, by reporting the case on a statement of agreed facts and seeking our ruling on the proper judgment to enter.

3. Judgment shall be entered declaring that Prudential-Bache Securities, Inc., does not hold in Massachusetts any "property and rights to property" of the Rahmans within the meaning of G. L. c. 62C, § 53.

*So ordered.*